**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No._____

JOAN V. GRIEGO,

      Plaintiff,

v.

ARIZONA PARTSMASTER, INC., d/b/a AZ PARTSMASTER, INC.,

      Defendant.

---

### COMPLAINT AND JURY TRIAL DEMAND

---

Plaintiff Joan V. Griego ("Plaintiff" or "Ms. Griego"), by and through undersigned counsel, for her Complaint against Defendant Arizona Partsmaster, Inc., d/b/a AZ Partsmaster Inc. ("Defendant" or "Company"), hereby alleges and states as follows:

### JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1332, 1337, 1343 and 1367. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), as amended, which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a). This Complaint also is for violations of the reciprocal or corresponding provisions of the Colorado Anti-Discrimination Act (CADA), C.R.S.

§§ 24-34-401, *et seq*.

2. Plaintiff has complied with all conditions precedent to the filing hereof. Plaintiff received via U.S. Mail a Right to Sue Notice dated January 29, 2020, which was sent by the U.S. Equal Employment Opportunity Commission. She also received a corresponding Right to Sue Notice dated December 10, 2019 from the Colorado Civil Rights Division.

3. The disability that is the subject of this action occurred on or about February 16, 2018, subsequent to the effective date of the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (codified as 42 U.S.C. § 12101, *et seq*.), on or about January 1, 2009, and Plaintiff's ADA claims are therefore controlled by said Amendments.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the employment practices herein that Ms. Griego alleges to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

5. At all times relevant to the allegations in this Complaint, Plaintiff was and continues to be a resident of Colorado. Had she been allowed to continue her employment at the Company, she would have worked at its warehouse located at 11600 E. 53rd Avenue, Denver, Colorado, 80239.

6. At all times relevant to the allegations in this Complaint, Plaintiff was an employee under 42 U.S.C. § 12111(4) and C.R.S. § 24-34-401(2).

7. At all times relevant to the allegations in this Complaint, Defendant, an Arizona corporation, has continuously been doing business in the State of Colorado and the City of Denver.

8. At all times relevant to the allegations in this Complaint, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

9. At all times relevant to the allegations in this Complaint, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

10. At all times relevant to the allegations in this Complaint, Defendant was an employer under C.R.S. § 24-34-401(3).

## **FACTUAL ALLEGATIONS**

11. On or about August 11, 2017, Defendant hired Ms. Griego into the position of warehouse associate at the Company's location at 11600 E. 53rd Avenue, Denver, Colorado, 80239 ("Warehouse"). Her immediate supervisor was Claudia Duran and her manager was Steve Covieo.

12. When first hired by the Company, Ms. Griego's understanding was that the essential functions of her job would involve counting physical inventory; entering the inventory information into the Company system; performing a second count of physical inventory; and researching any items missing from inventory.

13. However, some time after she was hired, the Company expanded Plaintiff's role

to be a "picker," which included reading customer orders to determine items to be gathered; moving product from receiving or storage areas to shipping or to other storage areas; assembling customer orders from stock and relocating orders to a holding area or shipping department.

14. Other than her supervisor Ms. Duran who would occasionally assist with picking, Ms. Griego was the only full-time female "picker" at the Warehouse.

15. Because the Warehouse did not have an automated cart with a lift to pick products from the upper shelves, it was common practice for female employees – namely, Ms. Duran and Ms. Griego – to highlight heavier items (approximately more than 50 pounds) on customer orders and have male employees carry those items down the ladder.

16. During her time with the Company, Plaintiff performed her duties satisfactorily and was not the subject of any disciplinary action.

17. On or about February 15, 2018, Ms. Griego was diagnosed with breast cancer, which her doctors proposed to treat with chemotherapy, a bilateral mastectomy, and reconstruction.

18. On or about February 16, 2018, Plaintiff informed Defendant of her breast cancer diagnosis.

19. With the approval of her supervisor Ms. Duran and manager Mr. Covieo, Plaintiff began her medical leave for surgery on or about March 20, 2018.

20. On or about March 23, 2018, Ms. Griego underwent a bilateral mastectomy.

21. On March 26, 2018, Ms. Griego's doctor completed a Certification of Health Care

Provider for Employee's Serious Health Condition form ("Certification") under the Family and Medical Leave Act (FMLA). On the form, Ms. Griego's doctor stated that the probable duration of her surgery, recovery, and follow-up examinations would be from around March 23, 2018 through around May 4, 2018.

22. In the Certification, Plaintiff's doctor also stated that while she could return to work a minimum of three weeks after surgery, she would be under the following light duty work restrictions for another three weeks: no lifting, pushing or pulling 25 pounds or greater. Her doctor also stated that six to eight weeks after being discharged from light duty, she would need to go in for weekly check-ups.

23. In the Certification, Plaintiff's doctor cleared Plaintiff to return to work with *no* restrictions six (6) weeks after her surgery.

24. On or about March 26, 2018, Ms. Griego submitted the FMLA Certification to her manager Mr. Covieo who then sent it to the Company's human resources department. Subsequently, Plaintiff was informed by the Defendant that because she had been with the Company for less than a year, she did not qualify for leave under the FMLA.

25. Plaintiff used her accrued 18 days of sick leave and vacation time to cover her medical leave.

26. From the time her medical leave began in March 2018 through the end of April 2018, Ms. Griego stayed in touch with manager Mr. Covieo and supervisor Ms. Duran. During that time, Plaintiff phoned and texted them and even visited the Warehouse a few times. Both her manager and supervisor assured Plaintiff that

she should take as much time off work as needed.

27. In or around April 2018, and in addition to the FMLA paperwork already submitted putting Defendant on notice of her light duty work restrictions, Ms. Griego attempted to engage in the interactive process and requested accommodations that would have allowed her to perform the essential functions of her job for the three-work term specified in her Certification.

28. To comply with her light duty work restrictions, Ms. Griego requested the following accommodations for the three-week period specified by her doctor in the Certification: pulling orders within the 25-pound weight restriction; maintaining the cleanliness of the Warehouse; cutting box flaps; counting inventory (as she had originally understood her job to be); and taking the trash out. Having worked in the position since August 2017, Plaintiff knew that such work was readily available in the Warehouse and could keep her busy for the three-week term of her light-duty restrictions.

29. In or around April 2018, Plaintiff notified Defendant's human resources manager, Cynthia Lopez, that she was ready to return to work with the reasonable accommodations that she had requested.

30. In or around April 2018, Plaintiff also met in-person with manager Mr. Covieo and supervisor Ms. Duran and notified them that she was ready to return to work with the reasonable accommodations that she had requested.

31. Supervisor Duran informed Plaintiff that the light duty work restrictions she had requested could not be accommodated because it was a small company and

Plaintiff would need to be back to 100 percent before she could return to work.

32. At no time did Defendant or its agents and employees attempt to engage in the interactive process to accommodate Plaintiff's requested light duty work restrictions for the three-week term specified in the Certification.

33. On or about May 4, 2018, Ms. Griego learned that her health insurance through the Defendant had been cancelled because, according to HR manager Lopez, Plaintiff had "abandoned" her job and that she should expect a letter that never came. Approximately one week later, after making a series of phone calls and texts, Ms. Griego learned from Manager Covieo that she had been terminated because she had exhausted her leave and the Company could not hold her job any longer.

34. Nearly a year later, after the start of this litigation, the Company finally produced a copy of a letter dated April 30, 2018, stating that Plaintiff had been terminated because she had exhausted her leave for a continued absence and could not return to work – except that she could have returned to work with the reasonable accommodations she had requested in or around April 2018.

35. Defendant's requirement that Ms. Griego be able to do perform her "full duties" before she could return to work constitutes a 100 percent healed policy in violation of the ADA/ADAAA.

36. Defendant's insistence that Ms. Griego be able to perform her full duties as a condition for returning to work and then terminating her when she requested reasonable accommodation had the effect of discriminating on the basis of

disability.

37. In requiring Ms. Griego to be able to perform her full duties, Defendant failed to provide individualized consideration and reasonable accommodation to Ms. Griego.

38. By requiring Ms. Griego to perform her full duties as a condition for returning to work, Defendant violated its own Company policy, at all times relevant, of investigating and identifying "barriers that make it difficult for the applicant or employee to have an equal opportunity to perform his or her job."

39. By requiring Ms. Griego to perform her full duties as a condition for returning to work, Defendant violated its own Company policy, at all times relevant, of identifying "possible accommodations, if any, that will help to eliminate the limitation or barrier," provided they were reasonable and did not impose undue hardship.

40. By refusing to engage in the interactive process, Defendant violated its own Company policy, at all times relevant, of either making a reasonable accommodation or proposing alternative(s).

41. In failing to provide individualized consideration, Defendant could not possibly have considered whether any accommodation would have imposed an undue hardship.

42. The refusal of Defendant to engage in any process – much less an interactive one – to determine an appropriate accommodation so that Plaintiff could return to work resulted in her pretextual, discriminatory, and retaliatory termination.

43. It was apparent that Plaintiff was either disabled or "regarded as disabled" by Supervisor Duran, Manager Covieo, and HR manager Lopez.

44. Clearly, it was this attitude of Defendant, its agents and employees *vis-à-vis* Plaintiff's actual or perceived disability/impairment that was the only limiting factor regarding Plaintiff's employment.

45. Despite Plaintiff's request for reasonable accommodations for her actual or perceived disabilities, Defendant, its agents and employees denied Plaintiff's rights under the ADA/ADAAA and the Colorado Anti-Discrimination Act (CADA).

**FIRST CLAIM FOR RELIEF**
**DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA/ADAAA [42 U.S.C. § 12112] AND COLORADO ANTI-DISCRIMINATION ACT [C.R.S. §24-34-402]**

46. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

47. Cancer is a disability because it substantially limits the major life activity of normal cell growth.

48. From February 2018 to present, Plaintiff has been disabled under the ADA/ADAAA and the CADA because she was diagnosed with breast cancer. She thus has a record of impairment.

49. Defendant, which is an employer within the meaning of the ADA/ADAAA and the CADA, was aware of Ms. Griego's disability because she informed Defendant of her condition in February 2018, which was prior to Defendant's adverse action of discharging Ms. Griego in or around May 2018.

50. As set forth herein, Plaintiff was qualified for her position and was able to

perform the essential functions of her position with and without an accommodation.

51. In or around April 2018, Plaintiff requested reasonable accommodation.

52. Despite Plaintiff's request for reasonable accommodation for her perceived or actual disabilities, Defendant, its agents, and employees denied Plaintiff's statutory rights under the ADA/ADAAA and CADA.

53. After Plaintiff provided Defendant with her physician's Certification allowing her to return to work with light duty work restrictions for a limited period of time, Defendant failed and refused to engage in any "interactive process" with Plaintiff to determine a reasonable accommodation, which is contrary to the foregoing federal and state anti-discrimination laws and the Company's own policy in place at the time.

54. Defendant's claim that Plaintiff needed to be 100 percent fully healed before she could return to work was a pretext and not supported by fact, resulting in the wrongful pretextual termination of Plaintiff in retaliation for asserting her rights under the foregoing federal and state anti-discrimination laws.

55. Defendant's claim that Plaintiff had abandoned her job was a pretext and not supported by fact, resulting in the wrongful pretextual termination of Plaintiff in retaliation for asserting her rights under the foregoing federal and state anti-discrimination laws.

56. Defendant's claim that it could not accommodate Plaintiff's requested accommodation without undue hardship was a pretext and not supported by fact,

resulting in the wrongful pretextual termination of Plaintiff in retaliation for asserting her rights under the foregoing federal and state anti-discrimination laws.

57. Because of Plaintiff's disability and/or perceived disability, and/or the need to provide her with reasonable accommodation, Defendant unlawfully discharged Plaintiff in or around May 2018.

58. Because of Plaintiff's disability and/or perceived disability, and/or the Defendant's failure to engage in the interactive process regarding her request for reasonable accommodation, Defendant denied Plaintiff her full disability benefit to which she was entitled under Defendant's own Company policy in place at the time.

59. The effect of the practices complained of in the foregoing paragraphs has been to deprive Ms. Griego of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

60. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

61. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to Ms. Griego's federal- and state-protected rights.

62. Defendant's actions directly and proximately caused damages incurred by Ms. Griego, entitling her to the remedies enumerated below.

**SECOND CLAIM FOR RELIEF**
**RETALIATION IN VIOLATION OF THE ADA/ADAAA [42 U.S.C. § 12112] AND**
**COLORADO ANTI-DISCRIMINATION ACT [C.R.S. §24-34-402]**

63. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

64. Plaintiff is a qualified individual with a disability due to her breast cancer diagnosis as detailed in the preceding paragraphs.

65. Plaintiff's requests for reasonable accommodation were protected activity under the ADA/ADAAA and CADA.

66. Defendant's refusal to engage in the interactive process, failure to restore Plaintiff to her job, and termination of her employment were adverse actions.

67. In or around May 2018, Defendant retaliated against Ms. Griego by discharging her because she requested and required reasonable accommodation following her surgery for breast cancer.

68. The effect of the practices complained of in the foregoing paragraphs has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

69. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

70. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to Ms. Griego's federal- and state-protected rights.

71. Defendant's actions directly and proximately caused damages incurred by Ms.

Griego, entitling her to the remedies enumerated below.

**THIRD CLAIM FOR RELIEF**
**FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA/ADAAA [42 U.S.C. § 12112] AND COLORADO ANTI-DISCRIMINATION ACT [C.R.S. §24-34-402]**

72. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

73. Plaintiff is a qualified individual with a disability due to her breast cancer diagnosis as detailed in the preceding paragraphs.

74. In or around April 2018, Plaintiff made several requests for reasonable accommodation for light duty work restrictions for a limited time period based on her physician's FMLA Certification.

75. Defendant failed to reasonably accommodate Ms. Griego's physical limitations.

76. Defendant failed to initiate or engage in the interactive process with Plaintiff in good faith in order to identify the precise limitations resulting from her disability and any potential accommodations that could overcome those limitations in violation of federal and state law, as well as its own Company policy in place at the time.

77. Plaintiff has been subjected to discrimination by Defendant as described more fully in the Factual Allegations section of this Complaint.

78. Defendant interfered with Plaintiff's rights as described more fully in the Factual Allegations section of this Complaint.

79. The effect of the practices complained of in the foregoing paragraphs has been to deprive Ms. Griego of equal employment opportunities and otherwise

adversely affect her status as an employee because of her disability.

80. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

81. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to Ms. Griego's federal- and state-protected rights.

82. Defendant's actions violated the ADA/ADAAA and the CADA, and directly and proximately caused damages incurred by Plaintiff, entitling her to the remedies enumerated below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for an award of all relief requested herein and that this Court enter judgment in her favor and award her all relief as allowed by law, including, but not limited to, the following:

a.      Actual economic losses on all claims allowed by law and in an amount to be determined at trial;

b.      Compensatory and consequential damages including, but not limited to, damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

c.      Punitive damages on all claims allowed by law and in an amount to be determined at trial;

d.      Pre-judgment and post-judgment interest at the statutory rate;

e.      Attorney's fees, costs and expenses; and

f.      Such further relief as justice so requires.


**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**


Dated: March 6, 2020

**Plaintiff's Address:**
Joan V. Griego
9595 Pecos St., Lot 570
Thornton, CO 80260

Respectfully submitted,


*s/ Malissa Williams*
Malissa Williams, Esq.
MARATHON LAW
2701 Lawrence St., Ste. 111
Denver, CO 80205
Tel: (303) 704-1222
E-mail: malissa@marathonlawdenver.com
Attorney for Plaintiff Joan V. Griego