**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 20-cv-0639-WJM-MEH

JOAN V. GRIEGO,

Plaintiff,

v.

ARIZONA PARTSMASTER, INC.,

Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT IN PART AND SETTING EVIDENTIARY HEARING ON THE ISSUE OF DAMAGES**

---

Plaintiff Joan Griego ("Plaintiff" or "Griego") brings this action against her former employer, Defendant Arizona Partsmaster, alleging that she was discharged in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. ("ADA"), and Colorado Anti-Discrimination Act, Colo. Rev. Stat. §§ 24-34-401, *et seq* ("CADA"). Before the Court is Plaintiff's Motion for Default Judgment ("Motion") (ECF No. 20). For the following reasons, the Court grants the Motion with respect to the issue of liability, and sets an evidentiary hearing on the issue of damages.

## I. BACKGROUND

The Court takes the following facts from Plaintiff's Complaint (ECF No.1) which, as a result of Defendant's default, are deemed admitted. Plaintiff began her employment with Defendant on August 11, 2017, as a warehouse associate at Defendant's Denver, Colorado location. (*Id.* ¶ 11.) Her duties included documenting

inventory, assembling customer orders from stock, and transporting products within the warehouse. (*Id.* ¶¶ 12–13.) On February 16, 2018, Plaintiff notified her supervisors that she had been diagnosed with breast cancer and was to undergo a bilateral mastectomy the following month. (*Id.* ¶ 17–18.) After obtaining approval of her supervisors, she began her medical leave on March 20, 2018. (*Id.* ¶ 19.)

Plaintiff underwent surgery on March 23, 2018. (*Id.* ¶ 20.) On March 26, 2018, Plaintiff's doctor completed a Certification of Health Care Provider for Employee's Serious Health Condition form ("Certification") under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"). (*Id.* ¶ 21.) Her doctor stated that she would be able to return to work three weeks later, but was not to lift, push, or pull any weight greater than twenty-five pounds. (*Id.* ¶ 22.) These restrictions were to last for three weeks, ending six weeks after her surgery. (*Id.* ¶ 23.)

Plaintiff submitted the Certification to her manager and Defendant's human resources department on or around March 26, 2018. (*Id.* ¶ 24.) Defendant informed Griego that she did not qualify for leave under the FMLA because she had worked there for less than one year. (*Id.*) Plaintiff used her eighteen days of accrued sick leave and vacation time to cover her three-week recovery period after her surgery. (*Id.* ¶ 25.) During that time, she remained in contact with her supervisors, who expressed that she should take as much time as she needed to recover. (*Id.* ¶ 26.)

In April 2018, Plaintiff notified Defendant's human resources department that she was prepared to return to work with the restrictions set by her doctor. (*Id.* ¶ 28–30.) Namely, she requested that for three weeks her duties consist of "pulling orders within

the 25-pound weight restriction; maintaining the cleanliness of the warehouse; cutting box flaps; counting inventory; and taking the trash out." (*Id.* ¶ 28.) Plaintiff's supervisor informed her that Defendant would not accommodate her requests, and Plaintiff would be able to return only when she had fully recovered. (*Id.* ¶ 31.)

On or about May 4, 2018, Griego learned that Defendant had terminated her medical insurance coverage. (*Id.* ¶ 33.) When Plaintiff contacted Defendant's human resources department, the representative stated that Plaintiff's employment had been terminated because she had "abandoned" her job. (*Id.* ¶ 33) Approximately one year later, Defendant provided Plaintiff with a copy of a letter dated April 30, 2018, which stated that Plaintiff had been terminated because she had exhausted her leave. (*Id.* ¶ 34.)

Before commencing this action, Plaintiff received a Right to Sue Notice from the U.S. Equal Employment Opportunity Commission ("EEOC") dated January 29, 2020. (*Id.* ¶ 2.) She also received a Right to Sue Notice from the Colorado Civil Rights Division ("CCRD"), dated December 10, 2019. (*Id.*) Plaintiff filed her Complaint on March 6, 2020 (ECF No. 1). The summons was returned executed on April 22, 2020 (ECF No. 11). Plaintiff obtained the Clerk's Entry of Default on May 14, 2020 (ECF No. 13).

## II. LEGAL STANDARD

Default must enter against a party who fails to appear or otherwise defend a lawsuit. Fed. R. Civ. P. 55(a). Default judgment must be entered by the Clerk of Court if the claim is for "a sum certain"; in all other cases, "the party must apply to the court

for a default judgment." Fed. R. Civ. P. 55(b)(2). Default judgment is typically available "only when the adversary process has been halted because of an essentially unresponsive party," in order to avoid further delay and uncertainty as to the diligent party's rights. *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

Before granting a motion for default judgment, the Court must take several steps. First, the Court must ensure that it has personal jurisdiction over the defaulting defendant and subject-matter jurisdiction over the action. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986). Next, the Court should consider whether the well-pleaded allegations of fact—which are admitted by the defendant upon default—support a judgment on the claims against the defaulting defendant. *See Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, 2009 WL 765872, at *3 (D. Colo. Mar. 20, 2009) ("Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment.").

## III. ANALYSIS

### A. Jurisdiction

The Court finds it has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's ADA claims arise under federal law. Pursuant to 28 U.S.C. § 1367, the Court finds that it has supplemental jurisdiction over Plaintiff's CADA claims.

Plaintiff alleges that she was employed at Defendant's warehouse located in Denver, Colorado. (ECF No. 1 ¶ 11.) Because Plaintiff's termination—the event giving rise to her claims—occurred in Colorado, the Court has specific personal jurisdiction

over Defendant. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (specific personal jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation").

**B. Plaintiff's Claims**

Plaintiff brings three claims under both the ADA and CADA: disability discrimination, retaliation, and failure to accommodate. (ECF No. 1 ¶¶ 46–82.) The Court's analysis of Plaintiff's ADA claims also applies to her claims under CADA. *See Aubrey v. Koppes*, 975 F.2d 995, 1004–05 (10th Cir. 2020) (applying analysis of claims under the ADA to claims asserted under the CADA and Rehabilitation Act); *see also Unrein v. PHC-Fort Morgan, Inc.*, 2020 WL 2465719, at *1 (D. Colo. May 13, 2020) (stating that the CADA should be interpreted consistent with the ADA "[w]henever possible" because they are "parallel statutes").

i. *The Statutes Apply to Plaintiff Because Defendant is a Covered Entity*

As a preliminary matter, a plaintiff pursuing a claim under the ADA or CADA must establish that she is an employee entitled to the protections of the statutes as a result of the fact that her employer is a covered entity subject to the statutes. *See* 42 U.S.C. § 12112(a); Colo. Rev. Stat. § 24-34-402(1)(a). To be a covered entity under the ADA, an employer must be "a person engaged in an industry affecting commerce who has 15 or more employees." 42 U.S.C. § 12111(5)(A). A covered entity under the CADA is one that employs more than one employee. Colo. Rev. Stat. § 24-34-401(2). Under the ADA and CADA, an employee is defined as an individual employed by an

employer. 42 U.S.C. § 12111(4); Colo. Rev. Stat. § 24-34-401(2).

Plaintiff argues that Defendant is in an industry involving commerce, and employs between 201 and 500 individuals. (ECF No. 20 at 9.) Accordingly, Defendant is subject to the ADA and CADA. Plaintiff also alleges that she was employed by Defendant. (ECF No. 1 ¶ 6.) Therefore, she was an employee entitled to the protections of the ADA and CADA. Satisfied that Plaintiff has alleged compliance with the prerequisites to bringing an action pursuant to the ADA and CADA, the Court proceeds to Plaintiff's allegations.

ii. *Disability Discrimination*

To establish a claim for disability discrimination under the ADA, a plaintiff must show that: (1) she is disabled as defined by the statute; (2) she was qualified to perform the essential functions of the employment position, with or without reasonable accommodation; and (3) her employment was terminated due to her disability. *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015).

A disability is a "physical or mental impairment that substantially limits one or more major life activities" of an individual. 42 U.S.C. § 12102(1)(A). Major life activities include normal cell growth. *Id.* § 12111(2)(B). Cancer is a disability because it substantially limits normal cell growth. 29 C.F.R. § 1630.2(3)(iii). Plaintiff has alleged that she had breast cancer, which constitutes a disability under the ADA. (ECF No. 1 ¶ 48.) Thus, the first element is satisfied.

A "qualified individual" is an individual who can perform the essential functions of an employment position, with or without reasonable accommodation. 42 U.S.C. § 12111(8). Plaintiff alleges that she was capable of performing the essential functions

of her job with the reasonable accommodation of performing lighter duties for three weeks. (ECF No. 1 ¶ 33.) Finally, Plaintiff alleges that she was terminated due to her disability. (*Id.* ¶ 57.) As Plaintiff alleges facts satisfying each element of her disability discrimination claim, she has established liability under the ADA and CADA.

iii. *Retaliation*

To establish a retaliation claim under the ADA, a plaintiff must show that: (1) she engaged in an activity protected under the ADA, (2) the employer took action that an objectively reasonable employee would find adverse, and (3) there was a causal connection between the plaintiff's protected conduct and the employer's adverse action. *Aubrey*, 975 F.3d at 1015. Requesting accommodations is a protected activity. *Id.* at 1015–16. Additionally, a court may consider the temporal proximity between the protected activity and adverse action in determining whether a causal connection exists. *Id.* at 1016.

First, Plaintiff alleges that she requested accommodations in the form of performing tasks that were less physically demanding. (ECF No. 1 ¶ 33.) Second, Plaintiff alleges that Defendant terminated her employment, which was an action that a reasonable employee would find adverse. (*Id.* ¶ 66–67; *see also Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) (stating that the plaintiff's termination was an adverse employment action).) Third, Plaintiff alleges that Defendant terminated her employment because of her request for accommodations. (*Id.* ¶ 67.) As she alleges that her request was the reason for discharge, and that only a few weeks elapsed between the request and her discharge, the Court finds that Plaintiff has

sufficiently alleged liability for retaliation under the ADA and CADA.

iv. *Failure to Accommodate*

To establish a claim for failure to accommodate under the ADA, a plaintiff must show that: (1) she was disabled, (2) she was otherwise qualified, (3) she requested a plausibly reasonable accommodation, and (4) her employer refused to accommodate the disability. *Aubrey*, 975 F.3d at 1006.

First, as stated above, Plaintiff alleges that she was disabled because she had cancer. (ECF No. 1 ¶ 48.) Second, Plaintiff alleges that she was otherwise qualified, as she states that she would have been able to perform her essential job duties with the accommodation of lighter assignments. (*Id.* ¶ 33.) Third, Plaintiff alleges that she requested reasonable accommodations when she told her supervisors that she would require modified job duties for three weeks. (*Id.* ¶ 28.) Fourth, Plaintiff alleges that Defendant informed her that she would be unable to return to her position until she had fully recovered and did not require accommodations. (*Id.* ¶ 31.) Accordingly, Plaintiff has established liability for failure to accommodate under the ADA and CADA.

**D. Damages**

Having determined that Defendant is liable to Plaintiff on the claims alleged in her Complaint, the Court must next determine the amount and character of Plaintiff's recovery. *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984) ("A final default judgment cannot be entered against a party until the amount of damages has been ascertained."). Actual proof must support any default judgment for money damages. *See Klapprott v. United States*, 335 U.S. 601, 611–12 (1949). In some situations, that

proof is provided in a hearing; however, the Court may enter a default judgment without a hearing if the amount claimed is "a liquidated sum or one capable of mathematical calculation." *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985).

Plaintiff seeks damages in the amount of $355,651.42, which represents $155,651.42 in front and back pay, based on her weekly rate of pay of $660, and $200,000 in compensatory and punitive damages. (ECF No. 20 at 10.) She also requests prejudgment interest on her back pay award, and a "tax-penalty off-set."[1] (*Id.* at 10.)

The Court concludes that it cannot determine Plaintiff's damages based on the present record, and it will set a hearing to determine the appropriate damages award. *See First Home Bank v. USA Pro Roofing & Constr., LLC*, 2018 WL 6990394, at *3 (D. Colo. Oct. 19, 2018) (stating that where "the damages sum is not certain or capable of easy computation, the court may hold whatever hearing or inquiry it deems necessary"). Plaintiff is directed to provide evidence in support of her damages sought.

i. *Compensatory and Punitive Damages*

A prevailing plaintiff in an action for intentional employment discrimination may recover punitive damages upon demonstrating that the defendant engaged in discriminatory practices with malice or reckless indifference to the rights of the plaintiff. 42 U.S.C. § 1981a(b)(1). The total amount of noncompensatory and punitive damages recoverable depends on the size of the defendant employer. The ADA caps damages at $100,000 for employers with between 101 and 200 employees, and at $200,000 for

---

[1] Plaintiff does not specify the meaning of this term, or cite a basis for awarding it.

employers with between 201 and 500 employees. *Id.* § 1981a(b)(3)(B)–(C).

Plaintiff alleges that Defendant employs between 201 and 500 employees. (ECF No. 20 at 9.) In an affidavit attached to the Motion, however, Plaintiff's attorney states that Defendant purports to have between 51 and 100 employees. (*Id.* at 18.) A printout of Defendant's LinkedIn website page reflects this figure. (*Id.* at 77.)

Without certainty of the Defendant's size, the Court cannot determine whether Plaintiff may recover noncompensatory or punitive damages in the amount sought, $200,000, or whether her award is capped at $100,000. At the hearing Griego must provide evidence of the number of employees employed by Defendant at the time of her separation.

ii. *Back Pay*

A plaintiff may recover back pay if a court finds that a defendant intentionally engaged in the unlawful employment practice alleged in the plaintiff's complaint. 42 U.S.C. § 2000e-5(g)(1). A plaintiff's interim earnings, however, reduce the back pay award. *Id.*; *see also Dilley v. SuperValu, Inc.*, 296 F.3d 958, 966 (10th Cir. 2002) ("Any back pay award must be reduced by the alternative sources of income that would reasonably have been available to [the plaintiff].").

Plaintiff alleges that she was unable to find employment after her termination. (ECF No. 20 at 14–15.) She requests back pay in the amount of $87,011.42, which represents her wages and the value of her benefits, including prejudgment interest at a rate of 8% compounded annually. (*Id.* at 9.) She states that this amount is measured from the date that she learned of her termination, May 4, 2018, through the filing of her

Complaint on March 6, 2020. (*Id.*)

The Court is not satisfied that Plaintiff has provided sufficient support for the amount she seeks in back pay. She includes no calculations demonstrating that the amount sought reflects the value of her wages and benefits for the relevant time period. Additionally, because the calculation of prejudgment interest depends on the principal amount of damages, the Court cannot determine the amount at this time. *See IMM, LLC v. Plankk Techs, Inc.*, 2020 WL 902320, at *4–5 (D. Colo. Feb. 25, 2020) (computing prejudgment interest based on the plaintiff's documented damages).

It will be incumbent on Plaintiff to establish at the hearing by means of competent, admissible evidence support for her requested back pay. If Plaintiff seeks the monetary value of her employment benefits in addition to her wages, she must provide evidence of their purported value as well.

iii. *Front Pay*

Front pay is an equitable remedy which a court may award in lieu of reinstatement. *Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 1000–01 (10th Cir. 2005). The amount of a front pay award is within the court's discretion, but the court "must avoid granting the plaintiff a windfall." *Id.* at 1001. In determining an appropriate front pay award, a court may consider factors such as the plaintiff's work life expectancy, salary and benefits at the time of termination, potential increases in salary, availability of other work opportunities, and the period within which the plaintiff may become re-employed with reasonable efforts. *Id.* at 1000–01 (citing *Davoll v. Webb*, 194 F.3d 1116, 1144 (10th Cir. 1999)).

Plaintiff requests front pay in the amount of $68,640.00, representing her weekly pay rate of $660 over a period of 24 months. (ECF No. 20 at 10.) She does not, however, provide *any* evidentiary support for choosing this particular amount of time, nor for the expectation that she will be unable to find other comparable employment prior to 24 months.

In awarding front pay, a district court must determine the amount necessary to make a plaintiff whole based on the specific factors outlined above. *See Davoll*, 194 F.3d at 1145 (reversing two-year front pay award where the district court did not articulate a basis for choosing that time period). The Court may not select an end date for front pay based on "mere guesswork." *Id.* (quoting *Carter v. Sedgwick Cnty, Kan.*, 929 F.2d 1501, 1505 (10th Cir. 1991)).

At the hearing Plaintiff must establish by competent, admissible evidence that she is in fact entitled to front pay for a period of two years. Documentation of these damages should take into account any income that Plaintiff could have earned using reasonable efforts to find new employment, and may include medical records and evidence of Plaintiff's efforts to find employment. *See Carter*, 292 F.2d at 1505.

**IV. ATTORNEY'S FEES AND COSTS**

Finally, Plaintiff seeks an award of attorney's fees and costs. (ECF No. 20 at 10.) The ADA authorizes a court, in its discretion, to award reasonable attorney's fees to the prevailing party in an employment discrimination action. 42 U.S.C. § 2000e-5(k). To determine reasonable attorney's fees, the Court must calculate a "lodestar figure" by multiplying a reasonable hourly rate by the hours reasonably expended. *Praseuth v.*

*Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005).

Plaintiff does not request attorney's fees in a particular amount, nor does she provide documentation of her attorney's fee rate or time spent on this matter, and as a result the Court has no idea whatsoever of what her lodestar fee amount is in this case. She is therefore directed to supply full documentation of her attorney's hours expended on this matter, her attorney's hourly rate, and the reasonableness of both.

As for Plaintiff's request for an award of costs, Federal Rule of Civil Procedure 54(d) provides that costs, other than attorney's fees, should be awarded to a prevailing party, and 28 U.S.C. § 1920 provides that such an award is to be made upon the filing of a bill of costs. While Plaintiff has not (appropriately given that judgment has not yet entered), filed a bill of costs, neither has she requested a particular sum she is seeking in costs. She must provide documentation of the costs reasonably expended in this case for the Court to properly consider an award of same.

The Court defers ruling on Plaintiffs' request for attorneys' fees and costs, but will permit Plaintiff time to file the appropriate documentation of both amounts as outlined above. This documentation will be due as set forth below, prior to the evidentiary hearing concerning damages, given that the Court will *not* address the issue of attorney's fees and costs at the hearing.

**V. CONCLUSION**

For the reasons set forth above, the Court has determined liability in Plaintiff's favor. Default judgment cannot enter, however, until Plaintiff has established her entitlement, if any, to damages to the Court's satisfaction. For the reasons set forth above, at the evidentiary hearing being set below Plaintiff must provide admissible

evidence establishing the factual basis for the sums she seeks for compensatory and punitive damages, front and back pay, and prejudgment interest.

In accordance with the foregoing, the Court ORDERS as follows:

1. Plaintiff's Motion (ECF No. 20) is GRANTED IN PART. The Court rules that Plaintiff has established liability in her favor on all claims pled in her Complaint;
2. Plaintiff shall submit all documentation required by rule and applicable case law of the reasonable amount of attorney's fees and costs expended by her in this matter by no later than **December 14, 2020**;
3. An in-person evidentiary hearing on compensatory and punitive damages, front and back pay, and prejudgment interest is hereby set for **January 7, 2021 at 10:00 a.m.** in Courtroom A801 of the Alfred J. Arraj United States Courthouse. Plaintiff shall familiarize herself with the undersigned's Revised Practice Standards with regard to evidentiary hearings, and with particular emphasis on WJM Revised Practice Standard V.F.1, which requires the parties to meet and confer regarding the proposed exhibits and, to the maximum extent possible, stipulate to the authenticity and admissibility thereof. The parties are also encouraged to consult the "Morning-of-Trial Deliverables" portion of the undersigned's Trial Preparation Conference & Pretrial Checklist, available here; and
4. Well in advance of the hearing Plaintiff shall notify the Court if she is withdrawing her request for any category of damages she is currently seeking.

Dated this 23rd day of November, 2020.

BY THE COURT:

William J. Martínez
United States District Judge